Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants Halstead Manhattan, LLC*
*formerly known as Halstead Property, LLC*
*and Ayo Haynes*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

**JANE DOE,**

Plaintiff,

—against—

1:18-cv-05436-KBF-DF

**HALSTEAD PROPERTY, LLC,**
**HALSTEAD MANHATTAN, LLC and**
**AYO HAYNES,**

Defendants.

------------------------------------------------------------------x

## <u>ANSWER</u>

Defendants Halstead Manhattan, LLC (formerly known as Halstead Property, LLC) and Ayo Haynes, by their attorneys the Law Offices of Andrew P. Saulitis P.C., answering the complaint of plaintiff "Jane Doe," aver as follows, which averments are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Any allegations not specifically admitted or as to which defendants lack knowledge or

information sufficient to form a belief as to their truth are generally denied.

1. Paragraph 1 of the complaint, headed "Preliminary Statement," is plaintiff's attorney's description of the purported nature of her action, to which no response is required. To the extent that said paragraph contains any substantive/factual allegations, defendants generally deny same and state that the simple reason that the subject condominium unit was not sold to plaintiff was that she was outbid by an all-cash offer that the seller accepted, pursuant to which the unit was sold (despite plaintiff's efforts to undermine the sale when it became apparent to her that that the owner was unwilling to sell the unit to her at a below-market price, which she had sought to obtain). Furthermore, Ayo Haynes/Halstead Property, LLC were the exclusive brokers for the owner and not for plaintiff and were duty-bound to seek out the highest and best purchase offer for the benefit of the owner, which they did, resulting in a sale to someone other than plaintiff, which had nothing to do with plaintiff's sexual orientation.

2. Paragraph 2 of the complaint contains allegations of the Court's subject matter jurisdiction to which defendants are not required to respond.

3. Paragraph 3 of the complaint contains allegations as to the basis of the venue for this action, which defendants do not contest. Defendants generally deny any "actions giving rise to Plaintiff's allegations" as more fully stated below.

4. Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations of paragraph 4 of the complaint.

5. Defendants deny the allegations of paragraph 5 of the complaint except admit that Ayo Haynes was and is a licensed associate real estate broker and that she resides in the Southern District of New York.

6. Defendants deny the allegations of paragraph 6 of the complaint except admit that Halstead Manhattan, LLC was formerly known as Halsted Property, LLC, which was the exclusive agent and broker for Frédéric Champel as the owner and seller of condominium unit 4 (the subject "Apartment") at 123 West 131st Street, New York, New York 10027 known as the Harlem Sol Condominium.

7. Defendants deny the allegations of paragraph 7 of the complaint except admit that Halstead Property LLC through Ms. Haynes was the exclusive agent/broker for the owner and seller of the Apartment.

8. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 8 of the complaint.

9. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 9 of the complaint except admit, upon information and belief, that plaintiff was a tenant of Dr. Champel, then the owner of the Apartment, under a written lease commencing on or about February 1, 2012, and refer to the lease and renewal thereof for a statement of the terms and conditions of plaintiff's tenancy, for which lease

Halstead Property LLC through Ms. Haynes had acted as broker.

10.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 10 of the complaint except are not required to respond to the purported statements and conclusions of law in said paragraph.

11.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11 of the complaint.

12.  Defendants deny the allegations of paragraph 12 of the complaint except admit that on or about March 19, 2017, the owner, Dr. Champel, contacted Ms. Haynes and told her that he wanted to sell the Apartment; that he asked her if she would act as his broker for such sale; that on or about March 21, 2017 Dr. Champel entered into an exclusive brokerage agreement with Halstead Property LLC and Ms. Haynes for that purpose; that on or about March 22, 2017, Ms. Haynes contacted plaintiff to gain access to the condominium unit (at which plaintiff was the tenant) and to discuss with her the possibility of her purchasing the Apartment prior to its being publicly listed, which was to be listed at an offering price of $499,000.

13.  Defendants deny the allegations of paragraph 13 of the complaint except admit on or about March 22, 2017, to assist plaintiff, Ms. Haynes gave her the names and contact information for two mortgage brokers and suggested that plaintiff reach out to them regarding getting pre-approved for mortgage financing for possible purchase of the

Apartment.

14.  Defendants deny the allegations of paragraph 14 of the complaint except admit on or about March 25, 2017 Ms. Haynes visited with plaintiff and Ms. Shateka (known as Teka) Barnes at the Apartment.

15.  Defendants deny the allegations of paragraph 15 of the complaint.

16.  Defendants deny the allegations of paragraph 16 of the complaint except admit that after the Apartment was publicly listed for sale (in April 2017), the owner, Dr. Champel, and Ms. Haynes wanted the Apartment shown through scheduled open houses (also to gauge the market while considering plaintiff's pre-listing offer to purchase the unit) and that Ms. Haynes sought plaintiff's cooperation in providing access for such showings.

17.  Defendants deny the allegations of paragraph 17 of the complaint except admit that when Ms. Haynes sought to arrange open houses for the unit, plaintiff insisted on being present, along with Ms. Barnes, who was also living in the unit, and that Ms. Haynes cooperated with this and abided by plaintiff's restrictions for access to the Apartment.

18.  Defendants deny the allegations of paragraph 18 of the complaint except admit, upon information and belief, that on March 27, 2017, plaintiff made an offer for the amount of $405,000 with a down payment of $40,500 directly to the seller (seeking to

bypass Ms. Haynes), against an offer from the seller of $475,000 (with a listing price of $499,000), which plaintiff did not accept, and that on or about March 27, 2017, plaintiff, after speaking with her mortgage banker, made a further offer of $407,000 (against an earlier counteroffer of $425,000), which was not accepted by the seller, in favor of offering the Apartment through a public listing at a listing price of $499,000.

19.  Defendants deny the allegations of paragraph 19 of the complaint except admit that on April 7, 2017 (before the Apartment had been placed on the market or shown to other prospective purchasers), plaintiff placed a "**final** and **best** counter offer" of $420,000 with a "seller's concession" of $10,000 (*i.e.*, plaintiff offered to purchase the Apartment for $410,000), which offer would become "null and void at 11:59 p.m. EST on Tuesday, April 11, 2017" stating further that "[i]n the event that I do not receive a response by the deadline this offer will be withdrawn, at which point I will wish Frederic [Champel] the absolute best in selling [the Apartment] to the highest cash bidder" and that such "counter offer" was not accepted by Dr. Champel.

20.  Defendants deny the allegations of paragraph 20 of the complaint except admit that after plaintiff had repeatedly tried to negotiate directly with the seller (to bypass Ms. Haynes), he referred plaintiff to Ms. Haynes as his exclusive broker. (Dr. Champel resides in France and is not fluent in English, and was reliant on "Google translate" to communicate regarding the Apartment, while plaintiff is an experienced lawyer.)

21.  Defendants deny the allegations of paragraph 21 of the complaint.

22.  Defendants deny the allegations of paragraph 22 of the complaint except refer to the "listing" referred to for a statement of what it said.

23.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 23 of the complaint.

24.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24 of the complaint.

25.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 25 of the complaint except admit, upon information and belief, that on April 19, 2017, plaintiff stated to Dr. Champel (the seller), directly, that she was willing to offer $440,000 to take the Apartment off the market, which offer was not accepted and the Apartment remained on the market, eventually to be sold to persons who outbid plaintiff, for a price higher than any ever offered by plaintiff.

26.  Defendants deny the allegations of paragraph 26 of the complaint except admit that during the week of April 17, 2017, Ms. Haynes spoke to plaintiff's banker and was informed that the building had not been approved yet for mortgage financing, which was critical for the seller in order to make a decision on plaintiff's offer and was further informed that plaintiff's banker would need to review the 2014 and 2015 financials for the building, which Ms. Haynes had not yet received, though she had sent him a balance sheet

that she had received from the seller, but did not know if that was enough to go on for plaintiff's banker.

27.  Defendants deny the allegations of paragraph 27 of the complaint except incorporate by reference their response to paragraph 26 of the complaint above.

28.  Defendants deny the allegations of paragraph 28 of the complaint.

29.  Defendants deny the allegations of paragraph 29 of the complaint and lack knowledge or information sufficient form a belief as to what is referred to as "certain information about the Condominium."

30.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 30 of the complaint.

31.  Defendants deny the allegations of paragraph 31 of the complaint except incorporate by reference their response to paragraph 26 of the complaint above.

32.  Defendants deny the allegations of paragraph 32 of the complaint except admit, upon information and belief, that an employee of Citibank, N.A. made statements concerning the process for approval of mortgage financing but lack knowledge or information sufficient to form a belief about the truth of the truth, accuracy or reliability of such statements.

33.  Defendants lack knowledge or information sufficient to form a belief about

the truth of the allegations of paragraph 33 of the complaint.

34.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 34 of the complaint.

35.  Defendants deny the allegations of paragraph 35 of the complaint except refer to the "financial questionnaire form" referred to for a statement of its contents and admit, upon information and belief, that the "Condominium" generally required financial information regarding prospective purchasers.

36.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 36 of the complaint.

37.  Defendants deny the allegations of paragraph 37 of the complaint except admit, upon information and belief, that on or about May 3, 2017, plaintiff presented to the seller directly a written "Offer to Purchase" for $450,000 to which they refer for a statement of its content and that the following day, plaintiff wrote to Ms. Haynes to inform her that plaintiff was withdrawing her best and final offer of $450,000 and that she was aware that the seller had two additional offers of $480,000 and $485,000 from other prospective purchasers and that "there is no need for further negotiation" and that plaintiff confirmed on May 6, 2017 that she was "no longer interested in buying this apartment."

38.  Defendants deny the allegations of paragraph 38 of the complaint except admit that Ms. Haynes continued to show the Apartment (because the Apartment remained

on the market) and sought plaintiff's cooperation in doing so and that plaintiff and Ms. Barnes remained present during showings, as plaintiff insisted they be.

39.  Defendants deny the allegations of paragraph 38 of the complaint except lack knowledge or information sufficient to form a belief as to what "email to Plaintiff and seller" is being referred to and specifically deny that plaintiff's sexual orientation (of which Ms. Haynes was not unaware) had any bearing whatsoever on the sale of the Apartment or to whom it might be sold.

40.  Defendants deny the allegations the allegations of paragraph 40 of the complaint except admit that on the same day that plaintiff purportedly "increased her offer to $470,000," the seller received a "full-ask" offer of $499,000 for an all-cash purchase, which he accepted, upon which the seller and the purchasers negotiated and entered into a contract of sale, as amended, pursuant to which the Apartment was sold for $485,000 all-cash (with no financing contingency). Also, plaintiff was herself aware that the seller had received "best and final offers" from others on May 8, 2017 and the next day, May 9, 2017, contacted the seller directly (again purposefully bypassing Ms. Haynes) and importuned him to sell the Apartment to her but did not offer a higher bid, so the seller proceeded with the other bids, which were higher and on better terms than any plaintiff had made.

41.  Defendants lack knowledge or information sufficient to form a belief about

the truth of the allegations of paragraph 41 of the complaint except deny, upon information and belief, that plaintiff was unaware that the seller had received bids higher than any plaintiff had made, having contacted the seller directly.

42. Defendants admit the allegations of paragraph 42 of the complaint and refer to the deed for the Apartment from Dr. Champel as seller and Barry Minkin and Christina Verrastro as purchasers, pursuant to which the Apartment was sold for $485,000.

43. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 43 of the complaint.

44. Responding to paragraph 44 of the complaint (realleging prior paragraphs), defendants incorporate by reference their responses above to the paragraphs referred to.

45. Defendants deny the allegations of paragraph 45 of the complaint.

46. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 46 of the complaint except admit, upon information and belief, that plaintiff had a personal relationship with "Teka" during times pertaining to the parties' dealings of which Ms. Haynes had been aware (though this had no bearing whatsoever on defendants' involvement in the sale of the Apartment).

47. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 47 of the complaint except admit, upon

information and belief, that "Teka" resided with plaintiff during times pertaining to the parties' dealings of which Ms. Haynes had been aware (though this had no bearing whatsoever on defendants' involvement in the sale of the Apartment).

48. Responding to paragraph 48 of the complaint, defendants admit that their business involved residential real estate and are not required to respond to the purported statements and conclusions of law in said paragraph.

49. Paragraph 49 of the complaint contains purported statements and/or conclusions of law to which defendants are not required to respond; otherwise denied.

50. Defendants deny the allegations of paragraph 50 of the complaint except admit, upon information and belief, that plaintiff made (and withdrew) various offers to purchase the Apartment (none higher than $475,000, all subject to being able to obtain financing for 90% of the purchase price), none of which was accepted by the seller, who sold the Apartment to bidders who offered a higher purchase price on an all-cash basis (among several other bidders who did so as well).

51. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 51 of the complaint, except deny, upon information and belief, that plaintiff ever received an actual financing commitment from any lender sufficient to finance a purchase for the amount at which the Apartment was sold (or for any higher amount).

52. Defendants deny the allegations of paragraph 52 of the complaint and state that any conversation about "religion" was a friendly one in which plaintiff asked Ms. Haynes to recommend a church in the neighborhood.

53. Defendants deny the allegations of paragraph 53 of the complaint and state that plaintiff and Ms. Barnes were present during open houses even though it is normal and advantageous and common practice for brokers to conduct open houses and showings and to stage listings without occupants being present.

54. Defendants deny the allegations of paragraph 54 of the complaint and subparagraphs thereof.

55. Defendants deny the allegations of paragraph 55 of the complaint or that there was any "discriminatory conduct" of any kind. The only reason the Apartment was not sold to plaintiff was that it was sold to others for a higher price than plaintiff had been or that she was ready willing and able to offer. In short, plaintiff was outbid in the marketplace, despite her efforts to get the owner to sell the Apartment for a below-market price.

56. Defendants deny the allegations of paragraph 56 of the complaint and subparagraphs thereof.

57. Defendants deny the allegations of paragraph 57 of the complaint and

subparagraphs thereof.

58. Defendants deny the allegations of paragraph 58 of the complaint and subparagraphs thereof.

59. Defendants deny the allegations of paragraph 59 of the complaint.

60. Defendants deny the allegations of paragraph 60 of the complaint or that there was any "discriminatory conduct."

61. Defendants deny the allegations of paragraph 61 of the complaint or that there was any "discriminatory conduct."

62. Defendants deny the allegations of paragraph 62 of the complaint and subparagraphs thereof.

63. Defendants deny the allegations of paragraph 63 of the complaint.

64. Defendants deny the allegations of paragraph 64 of the complaint.

65. Defendants deny the allegations of paragraph 65 of the complaint.

66. Defendants deny the allegations of paragraph 66 of the complaint.

67. Defendants deny the allegations of paragraph 67 of the complaint.

68. Defendants deny the allegations of paragraph 68 of the complaint.

69. Responding to paragraph 69 of the complaint (realleging prior paragraphs), defendants incorporate by reference their responses above to the paragraphs referred to.

70. Defendants deny the allegations of paragraph 70 of the complaint and subparagraphs thereof.

71. Defendants deny the allegations of paragraph 71 of the complaint or that there was any "discriminatory conduct."

72. Defendants deny the allegations of paragraph 72 of the complaint.

73. Defendants deny the allegations of paragraph 73 of the complaint.

74. Defendants deny the allegations of paragraph 74 of the complaint.

75. Defendants deny the allegations of paragraph 75 of the complaint.

76. Defendants deny the allegations of paragraph 76 of the complaint.

77. Defendants deny the allegations of paragraph 77 of the complaint.

78. Defendants deny the allegations of paragraph 78 of the complaint.

79. Responding to paragraph 79 of the complaint (realleging prior paragraphs),

defendants incorporate by reference their responses above to the paragraphs referred to.

80. Defendants deny the allegations of paragraph 80 of the complaint or that there was any "discriminatory conduct."

81. Defendants deny the allegations of paragraph 81 of the complaint.

82. Defendants deny the allegations of paragraph 82 of the complaint.

83. Paragraph 83 of the complaint contains purported statements and/or conclusions of law to which defendants are not required to respond.

84. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 84 of the complaint as to whether plaintiff was qualified to purchase the Apartment and admit that plaintiff expressed her desire to purchase the Apartment but at prices that were lower than what the seller would accept and which were less than prices offered by others in the marketplace.

85. Defendants deny the allegations of paragraph 85 of the complaint.

86. Defendants deny the allegations of paragraph 86 of the complaint.

87. Defendants deny the allegations of paragraph 87 of the complaint.

88. Defendants deny the allegations of paragraph 88 of the complaint.

89. Defendants deny the allegations of paragraph 89 of the complaint.

90. Defendants deny the allegations of paragraph 90 of the complaint.

91. Defendants deny the allegations of paragraph 91 of the complaint.

FIRST AFFIRMATIVE DEFENSE

92. The complaint, in whole or in part, fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

93. The a legitimate, nondiscriminatory rationale for the sale of the Apartment to persons other than plaintiff was that plaintiff was outbid by an all-cash offer that the owner accepted, higher than offer any plaintiff had made, resulting in the sale of the Apartment to others. (All offers by plaintiff were also contingent upon her being able to obtain financing for 90% of the purchase price, which added an element of risk, uncertainty and delay in consummating a sale of the Apartment.)

THIRD AFFIRMATIVE DEFENSE

94. Plaintiff thought that because she had been a tenant of the apartment and had a prior relationship with the owner that she could prevail upon him to sell the Apartment to her at a favorable, below-market price, ahead of a market sale. She was disappointed when

the owner decided nevertheless to publicly list the apartment at a substantially higher price, which sale plaintiff sought to impede. When her efforts failed, she became vindictive, and came up with false and utterly baseless accusations of discrimination based on her sexual orientation, which had nothing to do with the sale of the apartment, or how it was sold, nor had it affected prior dealings plaintiff had with defendants.

## FOURTH AFFIRMATIVE DEFENSE

95.   Plaintiff did not rely on any actions on the part of defendants in her attempts to purchase the Apartment. Indeed she sought to bypass Ms. Haynes and attempted to negotiate a purchase directly from the owner, seeking to bypass Ms. Haynes, albeit without success.

96.   No action on the part of defendants was the cause of plaintiff's not purchasing the Apartment.

## FIFTH AFFIRMATIVE DEFENSE

97.   Plaintiff engaged her own real estate brokers/agents (Richard Sauerhaft and Karen Adler) in connection with her seeking to purchase the Apartment, who failed to procure a purchase opportunity on her behalf.

98.   And if plaintiff had actually been ready, willing and able to purchase the Apartment, her inability to do that was caused by her own brokers'/agents' acts and

omissions in procuring such purchase on her behalf, and not any action or inaction on the part of defendants, who had duty to represent plaintiff or to act contrary to the best interests of the seller in achieving the most favorable terms of sale for the Apartment.

## SIXTH AFFIRMATIVE DEFENSE

99.  Ms. Haynes and Halstead Property LLC were the agents solely for the seller, and were not agents (nor dual agents) for plaintiff, and did not owe plaintiff any special duty to procure the Apartment at an advantageous price, which would have been a violation of their duties to the seller. Plaintiff specifically and expressly disavowed any dual agency relationship with defendants.

100.  There is no custom in the in the real estate industry of disclosing to interested buyers the specific terms of another buyer's offer prior to agreeing to a sale.

## SEVENTH AFFIRMATIVE DEFENSE

101.  Plaintiff's claims are barred, in whole or in part, by her unclean hands and inequitable conduct.

## EIGHTH AFFIRMATIVE DEFENSE

102.  Plaintiff (who is a lawyer) brought this action out of spite, to tarnish the reputation of a real estate broker who has an unblemished reputation and who has impeccably served a highly diverse clientele with the highest level of integrity, and who

faithfully carried out her obligations as exclusive agent for the seller so as to obtain for him the highest and best price in the market for the Apartment, despite plaintiff's efforts to undermine Ms. Haynes' relationship with the seller for her own benefit. Indeed Ms. Haynes carried out such duties at a financial sacrifice to herself, in that she could have obtained a substantially higher commission had plaintiff been the purchaser of the Apartment.

## NINTH AFFIRMATIVE DEFENSE

103.  Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, acquiescence, ratification and/or and waiver.

## TENTH AFFIRMATIVE DEFENSE

104.  Plaintiff's claims damages are barred, in whole or in part, by her failure to mitigate her claimed damages (her entitlement to any being expressly denied).

## ELEVENTH AFFIRMATIVE DEFENSE

105.  Plaintiff did not make a bona fide offer to purchase the Apartment upon which defendants refused to negotiate the sale of the Apartment.

106.  Defendants did not refuse to sell after the making of a bona fide offer, nor did they refuse to negotiate for the sale of, or otherwise make unavailable or deny, a dwelling

to plaintiff because of race, color, religion, sex, familial status, or national origin.

107. Defendants did discriminate against plaintiff in the terms, conditions, or privileges of sale of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

108. Defendants did not make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale of a dwelling that indicated any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

109. Defendants did not represent to plaintiff because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling was not available for inspection, sale, or rental when such dwelling is in fact so available.

110. Defendants' dealings with plaintiff were not otherwise affected by plaintiff's race, color, religion, sex, handicap, familial status, or national origin.

## TWELFTH AFFIRMATIVE DEFENSE

111. Defendants have and had no animus against any protected group nor was this a significant factor (or a factor at all) in the position taken by the decision-maker (the owner of the Apartment) or by those to whom the decision-maker was responsive with

respect to sale of the Apartment, which was made based on the highest and best offer that the owner received.

112. Plaintiff has no evidence otherwise, and had any such evidence when the complaint was filed.

## THIRTEENTH AFFIRMATIVE DEFENSE

113. No actions on the part of defendants was purposeful to discriminate against plaintiff as to any protected category.

## FOURTEENTH AFFIRMATIVE DEFENSE

114. Plaintiff has not established that she was qualified to buy the Apartment at the price sought by, and ultimately sold by, the seller thereof.

## FIFTEENTH AFFIRMATIVE DEFENSE

115. Ayo Haynes acted as agent of disclosed principals (the owner of the Apartment and Halstead Property, LLC) and is not personally liable as such.

## SIXTEENTH AFFIRMATIVE DEFENSE

116. This action is barred by the applicable statute(s) of limitations including without limitation 42 U.S.C. §§ 3604 & 3612.

## SEVENTEENTH AFFIRMATIVE DEFENSE

117.  Discrimination based on sexual orientation is not covered under the Federal Housing Act.

118.  The Court should decline to exercise supplemental jurisdiction in this action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

119.  Plaintiff's attorney Ian J. Brandt was a witness to and participant in transactions that are the subject of this action and is subject to disqualification under the "attorney-witness rule." Disciplinary Rule 5-102.

**Demand for Judgment:** Defendants Halstead Manhattan, LLC formerly known as Halstead Property, LLC and Ayo Haynes demand judgment in their favor and against plaintiff "Jane Doe" dismissing the complaint with prejudice; and, and as to each claim to which defendants are the prevailing party or parties, awarding costs including a reasonable attorney's fee against plaintiff; and granting such other and further relief as the Court deems just. Defendants reserve the right to seek appropriate sanctions against plaintiff and

her attorney(s) under Fed. R. Civ. P. 11 unless all claims are immediately withdrawn.

Dated:   August 23, 2018

_____
Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants Halstead Manhattan,*
*LLC formerly known as Halstead Property, LLC*
*and Ayo Haynes*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
Email: apslaw@msn.com

TO:

Ian J. Brandt
WAGNER BERKOW, LLP
*Attorneys for Plaintiff "Jane Doe"*
1410 Broadway, 23rd Floor
New York, New York 10118
(646) 791-2086
Email: ijbrandt@wagnerberkow.com