Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants Halstead Manhattan, LLC*
*formerly known as Halstead Property, LLC*
*and Ayo Haynes*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

**JANE DOE,**

                              Plaintiff,

               —against—                          1:18-cv-05436-AKH-DF

**HALSTEAD PROPERTY, LLC,**
**HALSTEAD MANHATTAN, LLC and**
**AYO HAYNES,**

                             Defendants.
-------------------------------------------------------------------x

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants Halstead Manhattan, LLC (formerly known as Halstead Property, LLC) and Ayo Haynes, by their attorneys the Law Offices of Andrew P. Saulitis P.C., pursuant to Fed. R. Civ. P. 26 (b) and 33 and Civil Case Management Plan so-ordered January 25, 2019 (ECF Doc. No. 22), serve the following response to PLAINTIFF'S FIRST SET OF INTERROGATORIES dated January 31, 2019 ("Interrogatories") as follows.

Objections/Qualifications

  A. Defendants object to plaintiff's "Definitions" to the extent that they alter the statutory or prescribed local rule definitions of terms used or the plain meaning of terms or, as to persons or entities, purport to include in reference thereto other persons or entities or persons and entities that are not parties to this action. Defendants do not adopt plaintiff's definitions in its responses. All terms are construed and responded to in their plain English sense.

  B. Defendants object to plaintiff's "Instructions" to the extent that they purport to impose greater or different obligations for responding to document requests than the procedures provided in Fed. R. Civ. P. 33 and associated local rules. The Interrogatories are responded to in accordance with such rules and procedures.

  C. Defendants object to the Interrogatories because they seek information for an unlimited time frame ("Excessive Time Frame").

  D. Defendants object to the Interrogatories to the extent they call for any information protected by privilege, including, without limitation, the attorney/client privilege, attorney work-product, or documents or materials prepared for or in anticipation of litigation or for trial which are outside of the scope of discovery permitted by the Federal Rules of Civil Procedure, each of which privilege or protection is hereby asserted, and not waived ("Privilege").

E. Defendants object to the Interrogatories to the extent that they seek matter that is outside the permissible scope of discovery under Fed. R. Civ. P. 26 (b) (1), *i.e.*, "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" ("Outside Scope/Disproportionate/ Burdensome").

F. Defendants object to the Interrogatories on the grounds that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive (*see* Fed. R. Civ. P. 26 (b) (2) (C) (i)) ("Duplicative").

G. Defendants object to the Interrogatories on the grounds that they seek discovery of electronically stored information from sources that are not reasonably accessible because of undue burden or cost, for which good cause has not been shown by plaintiff) ("Undue ESI Burden").

H. To the extent the information requested can be derived or ascertained from the records made or to be made available to plaintiff, defendants rely upon the information contained in such records and refer plaintiff to same for the purpose of deriving the requested information ("Information Ascertainable From Documents").

The responses below are subject to and without waiver of any of the above objections and reserving all objections to admissibility to the time of trial or as to any other use thereof.

Defendants reserve the right to supplement and/or correct these responses as appropriate.

The responses below are subject to and without waiver of any of the above objections and reserving all objections to admissibility to the time of trial or as to any other use thereof.

## Interrogatories/Responses/Objections

Interrogatory No. 1: Set forth the name and address of each person answering these Interrogatories and state his or her:

a. title and relationship to each responding party;

b. duties and responsibilities;

c. the interrogatories responded to by each identified person; and

d. the identity of any writings and/or documents utilized to respond to any interrogatory.

Objection(s)/Response:  Ayo Haynes; (a) associate real estate broker; (b) objected to on the grounds that this interrogatory subpart seeks matters of law; duties and responsibilities were those of a licensed associate real estate broker, in this case representing the seller under an exclusive brokerage agreement (see listing agreement);

-4-

(c) not applicable; (d) Disproportionate/ Burdensome, Overbroad, Duplicative; lack of particularity; see Initial Disclosures and Response to Request for Production. References to documents are included below where specifically applicable.

Interrogatory No. 2: Identify with particularity when and how Haynes communicated to Plaintiff the terms of Champel's "earlier counteroffer of $425,000" as alleged in paragraph 18 of the Answer.[1]

Objection(s)/Response: Objected to as misleading as the "earlier counteroffer" (which was not accepted) was superseded. Communications: Telephone call 03/29/17 (evening) between Geannetta Jackson and Ayo Haynes (per Jackson, "[$425K] was the last price that Ayo communicated to me on March 29, 2017 during our evening phone conversation"); email 03/30/17 9:48 AM from Ayo Haynes to Geannetta Jackson ("Geannetta, just wanted to send you an email recapping Frederic's counter offer of $425,000. . . ."); telephone call from Ayo Haynes to Geannetta Jackson 03/30/17 02:21 PM (approx. 1 min. call); telephone call from Ayo Haynes to Geannetta Jackson 03/30/17 02:24 PM (approx.16 min. call); telephone call from Ayo Haynes to Geannetta Jackson 03/30/17 02:25 PM (approx. 7 min. call); email 03/30/17 11:39 PM from Ayo Haynes to Geannetta Jackson; text 03/31/17 8:43 PM from Ayo Haynes to Geannetta Jackson; email

---

[1] Paragraph 18 of the Answer states: "Defendants deny the allegations of paragraph 18 of the complaint except admit, upon information and belief, that on March 27, 2017, plaintiff made an offer for the amount of $405,000 with a down payment of $40,500 directly to the seller (seeking to bypass Ms. Haynes), against an offer from the seller of $475,000 (with a listing price of $499,000), which plaintiff did not accept, and that on or about March 27, 2017, plaintiff, after speaking with her mortgage banker, made a further offer of $407,000 (against an earlier counteroffer of $425,000), which was not accepted by the seller, in favor of offering the Apartment through a public listing at a listing price of $499,000."

04/03/17 5:39 PM from Ayo Haynes to Geannetta Jackson. In context: Before the Apartment was publicly listed, on April 1, 2017 at approximately 12:30 PM, Geannetta Jackson emailed Frédéric Champel (the owner/seller) directly, advising him that she had spoken with Ayo Haynes in the evening of March 29, 2017 and had been informed by Ms. Haynes that M. Champel had "counter offered" $425,000, and informing him that after speaking with her mortgage banker she had presented a counter offer of $407,000 based on her approvals, or otherwise a price of $420,000 with a "seller's concession of $20K," *i.e.*, $400,000.[2] Neither of these was accepted by M. Champel, who had decided to proceed with public listing of the unit at $499,000 to gauge the free market. On or about April 27, 2017, Ms. Haynes verbally presented to another offer from M. Champel to Ms. Jackson, of $475,000, which Ms. Jackson rejected and submitted a counter-offer of $405,000 with a $40,500 down payment,[3] which M. Champel did not accept, in favor of publicly listing the Apartment at $499,000. There were further negotiations with various prospective purchasers, involving significantly higher prices and more favorable terms at or close to the listing price, resulting in an accepted offer at the asking price of $499,000 all cash (and no financing contingency).

Interrogatory No. 3: Identify with particularity when Haynes first learned that Plaintiff co-habitated with Shateka Barnes.

---

[2] M. Champel, who resides in France, was not fluent in English and used "Google translate" in his communications. M. Champel appointed Ayo Haynes as his exclusive broker, of which Ms. Jackson was aware. Despite knowing this, Ms. Jackson sought to have direct communications with him (without informing Ayo Haynes).

[3] All of Ms. Jackson's offers were contingent upon her ability to obtain 90% financing.

Objection(s)/Response: Objected to as misleading. Over the years since becoming acquainted with Geannetta Jackson and assisting her in obtaining a lease (in 2012) and renewal lease (in 2014) for the Apartment, Ayo Haynes was generally aware that Ms. Jackson had same-sex relationships (see response to Interrogatory 7 below). In early 2017, when the owner decided to put the Apartment up for sale, Ms. Haynes was made aware by Ms. Jackson that she and Ms. Barnes were in a relationship through Ms. Jackson's Facebook postings,[4] months prior to meeting Ms. Barnes in person at the Apartment (on March 25, 2017),[5] after which Ms. Haynes had interaction with Ms. Barnes in connection with arranging open houses for viewing by prospective purchasers. (Neither Ms. Jackson's nor Ms. Barnes' sex, sexual orientation, familial and/or marital or relationship status had any bearing on Ms. Haynes' dealings with them.)

Interrogatory No. 4: Identify and describe the reasons the contract sales price of the Apartment was reduced from $499,000 to $485,000 as alleged in paragraph 40 of the Answer.[6]

---

[4] Ms. Jackson had "friended" Ms. Haynes on Facebook shortly after moving in to the Apartment in 2012 through which Ms. Jackson shared aspects of her personal life.

[55] Prior to the in-person visit, Ms. Jackson had told Ms. Haynes that she would be meeting Ms. Barnes at the Apartment.

[6] Paragraph 40 of the Answer states: "Defendants deny the allegations the allegations of paragraph 40 of the complaint except admit that on the same day that plaintiff purportedly 'increased her offer to $470,000,' the seller received a 'full-ask' offer of $499,000 for an all-cash purchase, which he accepted, upon which the seller and the purchasers negotiated and entered into a contract of sale, as amended, pursuant to which the Apartment was sold for $485,000 all-cash (with no financing contingency). Also, plaintiff was herself aware that the seller had received 'best and final offers' from others on May 8, 2017 and the next day, May 9, 2017, contacted the seller directly (again purposefully bypassing Ms. Haynes) and importuned him to sell the Apartment to her but did not offer a higher bid, so the seller proceeded with the other bids, which were higher and on better terms than any plaintiff had made."

Objection(s)/Response: The original Contract of Sale (with rider) was executed on or about May 17, 2017 between Frédéric Champel and Barry Minkin and Christina Verrastro for an all-cash purchase price of $499,000 (with no financing contingency, *see* ¶ 1.21.2). There was an Amendment to Contract of Sale executed as of June 9, 2017 under which the purchase price was reduced to $485,000 (from $499,000). Upon information and belief, these were the result of negotiations principally between the seller's attorney and the purchasers' attorney (Sheldon J. Fleishman, Esq. and Daniel Churgin, Esq. respectively) due to their learning that under her extant lease for the Apartment, Ms. Jackson was entitled to remain in possession through January 2018, whereby the seller was unable to deliver exclusive possession by the originally-agreed closing date (*see* ¶ 8 of Contract of Sale) and other possible complications resulting in a negotiated adjustment of the originally-agreed purchase price. Defendants refer plaintiff to attorneys Fleishman and Churgin for information regarding their negotiations giving rise to the Contract of Sale and amendment thereto.

Interrogatory No. 5: Identify and describe with particularity the terms, financial and otherwise, for any and all bids tendered to Defendants and/or Champel for the purchase of the Apartment.

Objection(s)/Response: Among other bids and expressions of interest, on May 5, 2017 at 6:27 PM, Ayo Haynes received an expression of interest from a broker for an all-cash offer at the listing price ($499,000) on behalf of Barry Minkin, which was

confirmed on May 9, 2017. In the same time frame, "highest and best" offers were sought and received from Elias El-Wadi for $490,000.00 (with a 20% down payment), from Jafar Santoso and Yvonne Hung for $485,000.00 (with a 25% down payment) and from Rebecca Chan for $460,000.00 (with a 40% down payment) by the "highest-and-best" deadline of May 8, 2017. The seller, Frédéric Champel, verbally accepted the $499,000 all-cash offer on or about May 9, 2017, subject to entry into contract of sale on acceptable terms, which followed, on May 17, 2017, which was negotiated and then amended through counsel for the seller and purchaser, leading to sale of the Apartment to Mr. Minkin and Christina Verrastro for $485,000 all-cash, on July 21, 2017, and subject to Ms. Jackson's lease for the Apartment.

Interrogatory No. 6: Identify where, when and from whom Haynes obtained the "financial questionnaire form" referenced in paragraph 40 of the Answer.

Objection(s)/Response: There is no "financial questionnaire form" referenced in paragraph 40 of the Answer.[7]

Interrogatory No. 7: Identify all persons with whom Haynes has communicated regarding Plaintiff's sex, sexual orientation, familial, and/or marital or relationship status, and set forth in detail the substance of such communications.

Objection(s)/Response: Ayo Haynes did not communicate with other persons regarding Geannetta Jackson's "sex, sexual orientation, familial, and/or marital or relationship status" in connection with her prospective purchase of the Apartment. Years

---

[7] *See* n.6 above.

earlier, within months after Ms. Jackson first moved into the Apartment (in early 2013), Jeff Lieberman, who lived next door to the Apartment, mentioned to Ms. Haynes that Ms. Jackson had a relationship with Nina Binder, who lived in Unit 8 of the condominium. Ms. Binder, who had been a client of Ms. Haynes for the rental and sale of her apartment, mentioned to Ms. Haynes that she (Ms. Binder) had had dated Ms. Jackson. (Ms. Haynes did not initiate any of the foregoing communications nor did she engage in discussions regarding Ms. Jackson's "sex, sexual orientation, familial, and/or marital or relationship status."[8]) Neither Ms. Jackson's nor anyone else's sex, sexual orientation, familial and/or marital or relationship status had any bearing on Ms. Haynes' dealings with them as a real estate broker or otherwise.

Dated: March 5, 2019

As to answers:

> I declare under penalty of perjury that the foregoing is true and correct.

_____
Ayo Haynes

As to objections:

_____
Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants Halstead Manhattan, LLC formerly known as Halstead Property, LLC and Ayo Haynes*

---

[8] Plaintiff implies that Ms. Haynes learned for the first time that plaintiff was homosexual when she met Ms. Barnes (plaintiff's fiancée) at the Apartment on March 25, 2017 (*see* Compl. ¶¶ 14-15), which was not actually the case. *See* Response to Interrogatory 3 above.

                                        40 Wall Street-37th Floor
                                        New York, New York 10005
                                        (212) 459-0900
                                        Email: apslaw@msn.com

TO:

WAGNER BERKOW, LLP
*Attorneys for Plaintiff "Jane Doe"*
1410 Broadway, 23rd Floor
New York, New York 10118
(646) 791-2086
Email: ijbrandt@wagnerberkow.com